UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**Robin Lynn G W.,**

                      **Plaintiff,**                        **19-CV-893Sr**

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**
_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on April 10, 2009, at the age of 41, alleging disability beginning March 1, 2003, due to injuries from a motor vehicle accident, depression and headaches. Dkt. #4, p.115.

Following a hearing at which plaintiff appeared without representation, Administrative Law Judge ("ALJ"), William M. Weir determined that plaintiff was capable

of performing the full range of medium work, including her past relevant work as a cashier. Dkt. #4, pp.20-26. The Appeals Council denied review, prompting plaintiff, now represented, to commence an action in the district court on October 10, 2012. 12-CV-949. By Judgment entered April 30, 2013, the Court ordered a Stipulation for remand pursuant to 42 U.S.C. § 405(g). 12-CV-949 at Dkt. #7. The Appeals Council vacated the ALJ's decision and remanded the matter to, *inter alia*, develop the medical record regarding plaintiff's mental health treatment; properly assess whether plaintiff suffered from a severe mental impairment; and properly evaluate the opinion of the consultative psychological examiner, Renee Baskin, Ph.D. Dkt. #4, pp.406-409.

Plaintiff appeared with counsel and testified, along with medical expert Arthur Lorber, M.D., and impartial vocational expert ("VE"), Jay Steinbrenner, at a second administrative hearing before ALJ Weir on June 16, 2014. Dkt. #4, pp.337-380. At the hearing, plaintiff amended her alleged onset date to September 20, 2007 to coincide with the filing date of her prior application. Dkt. #4, p.318. ALJ Weir rendered a decision that plaintiff was not disabled on April 22, 2015. Dkt. #4, pp.318-330. The Appeals Council denied review on July 8, 2016. Dkt. #4, p.308. On November 29, 2017, the district court remanded the matter because the ALJ relied upon the opinion of a medical expert who used an improper definition of severe impairment, causing the ALJ to fail to consider several of plaintiff's impairments or their impact on plaintiff's Residual Functional Capacity ("RFC"). Dkt. #4, pp.1081-1082.

On September 17, 2018, plaintiff appeared with counsel and testified, along with a medical expert, Sonya Clark, and an impartial vocational expert ("VE"),

Lanell Hall, at a third administrative hearing before ALJ Mary Mattimore. Dkt. #4, pp.966-1030. Plaintiff testified that she was seeing a mental health counselor but was not taking any medication even though she felt she needed something for her anxiety because her provider refused to prescribe something stronger. Dkt. #4, pp.978 & 1012. Plaintiff testified that certain things trigger her anxiety, which can overwhelm her. Dkt. #4, p.1008. She experiences panic attacks every day. Dkt. #4, p.1011. She is working with her counselor to address her dysfunctional family and history of substance abuse which caused her to lose custody of her children. Dkt. #4, pp.1013-1014. Plaintiff testified that she did not believe she could work because she is focusing on addressing these issues and it wouldn't be fair to her co-workers if she was at work and became overwhelmed or experienced an anxiety attack. Dkt. #4, p.1018. Plaintiff was a high school graduate and attended three years at Erie Community College, but fell short on credits and lost financial aid. Dkt. #4, pp. 986-987.

   The medical expert testified that there was medical evidence of a right shoulder partial rotator cuff tear; right wrist partial ligament tear; bilateral knee pain; right hip bursitis; degenerative changes of the lumbar spine; and neck pain, none of which would meet any listing. Dkt. #4, pp.982-985. Dr. Clark testified that the greatest functional limitation would come from the shoulder injury, which would preclude lifting above shoulder height or carrying more than ten pounds on plaintiff's dominant, right side. Dkt. #4, pp.986-988. Dr. Clark also recommended that plaintiff avoid climbing, crawling, crouching, bending or lifting more than 10 pounds as a result of the lumbar issues. Dkt. #4, p.989. She could occasionally stoop. Dkt. #4, p.998. Dr. Clark opined

that all of plaintiff's physical functional limitations were caused by the motor vehicle accident of October 17, 2013, and while most of those limitations did not persist for a year, plaintiff's ability to stand and walk was limited to 2 hours. Dkt. #4, pp.991-992, 995 & 1000.

When asked to assume an individual with plaintiff's age, education and past work experience who could lift and carry a maximum of 10 pounds and occasionally push/pull bilaterally, but could not reach overhead with her right dominant upper extremity or climb ropes, ladders, scaffolds, crawl, crouch or be exposed to hazardous machines or unprotected heights or concentrated exposure to smoke, gas, odors, pulmonary irritants or poor ventilation, and was limited to a low-stress jobs where she could understand, remember and carry out simple, routine work and make simple workplace decisions, not at a production-rate pace, and could tolerate minimal changes in work place processes and settings, with occasional interaction with supervisors, coworkers and the public, the VE testified that plaintiff could work as a touch-up screener, document preparer and table worker, each of which were unskilled, sedentary positions. Dkt. #4, pp.1021-1022.

On October 16, 2018, the ALJ rendered a decision that plaintiff was not disabled between April 10, 2009, the date of application, and September 1, 2017, when she turned 50 and application of Medical-Vocational Rule 201.12 rendered her disabled. Dkt. #4, pp.930-955. The Appeals Council denied review on May 6, 2019. Dkt. #4, p.922. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 8, 2019. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant seeking SSI must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform

physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of April 10, 2009; (2) plaintiff's asthma, migraine headaches, degenerative changes of the lumbar spine, depression, bilateral knee impairment, degenerative disc disease of the lumbar and cervical spine, anxiety, right shoulder impingement syndrome, and arthrosis and partial rotator cuff tear of the right shoulder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[1] with the

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out

following limitations: no overhead lifting bilaterally or overhead reaching with right dominant upper extremity, no concentrated exposure to smoke, gases, odors, pulmonary irritants or poor ventilation, occasional push/pull bilaterally, no climbing of ropes, ladders or scaffolds, no crawling, no crouching, no exposure to hazardous machines or unprotected heights, occasional stooping and kneeling, no more than simple routine work with simple routine workplace decisions, not at production rate pace, no more than minimal changes in workplace processes and settings, and no more than occasional interaction with supervisors, coworkers and the public; and (5) plaintiff had no past relevant work, but was capable of working as a touch up screener, document preparer or table worker, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA until September 1, 2017, when her age category changed and Medical-Vocational Rule 201.12 directed that plaintiff be found disabled. Dkt. #4, pp.938-954.

.

      Plaintiff argues that the ALJ's RFC determination regarding limitations caused by mental impairments is not supported by substantial evidence because there is a gap in the record between 2009 and 2017 and any assessment during that time period was necessarily a product of the ALJ's lay judgment rather than medical source opinion. Dkt. #10-1, pp.23-29. Plaintiff argues that the record demonstrates that plaintiff's mental health deteriorated following the 2009 assessment. Dkt. #10-1, pp.27-28.

---

      job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The Commissioner responds that the ALJ properly relied upon three consulting medical opinions and properly assessed subsequent mental health treatment notes to determine plaintiff's RFC. Dkt. #12-1, pp.14-19.

Thomas Ryan, Ph.D., performed a consultative psychiatric evaluation of plaintiff on November 9, 2007. Dkt. #4, p.167. Plaintiff reported that she was a high school graduate. Dkt. #4, p.167. Plaintiff reported some irritability and social withdrawal, as well as usual life stress and worry, but no panic attacks or problems with depression. Dkt. #4, p.167. Her attention and concentration was intact; her recent and remote memory skills were intact; and her cognitive functioning was within the average range. Dkt. #4, pp.168-169. Dr. Ryan opined that plaintiff

> can follow and understand simple directions and perform simple tasks, maintain attention and concentration, and maintain a regular schedule. She is capable of learning new tasks. She can generally relate with others. She may have some difficulty with complex tasks. Decision making is somewhat impaired. She may have difficulty dealing with stress.

Dkt.#4, p.169.

Renee Baskin, Ph.D., performed a consultative psychiatric evaluation of plaintiff on June 25, 2009. Dkt. #4, p.216. Plaintiff reported that she had graduated from high school in regular education classes. Dkt. #4, p.216. Plaintiff reported depressive and anxiety related symptoms secondary to chronic pain and significant limitations from a motor vehicle accident in 2000. Dkt. #4, p.216. She denied panic attacks. Dkt. #4, p.217. Her attention and concentration was mildly impaired due to discomfort; her

recent and remote memory was relatively intact; and her intellectual functioning was estimated to be below average to borderline. Dkt. #4, p.218. Dr. Baskin opined that plaintiff

> would have minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions and relate adequately with others. . . . Moderate limitations being able to deal with stress.

Dkt. #4, p.218.

Ashely Dolan, Psy.D., performed a consultative psychiatric evaluation of plaintiff on June 6, 2017. Dkt. #4-1, p.97. Plaintiff reported that she had completed one year of college. Dkt. #4-1, p.97. Plaintiff reported dysphoric moods, crying spells, irritability, frustration, aggravation, anhedonia, fatigue, social withdrawal, excessive apprehension and worry, and feeling easily overwhelmed. Dkt. #4-1, p.97. She reported smoking cannabis to relax her mind, but was unsure of the frequency of use. Dkt. #4-1, p.98. She also reported gambling at the casino and asking other patrons for money so she could continue to gamble. Dkt. #4-1, p.99. She was observed to be cooperative although evasive and nervous during the examination. Dkt. #4-1, p.98. Her attention and concentration and recent and remote memory were mildly impaired due to anxiety or nervousness in the evaluation and her intellectual functioning was estimated to be average. Dkt. #4-1, p.99. Dr. Dolan opined that plaintiff

> is able to understand, remember, and apply simple directions. She is able to understand, remember, and apply complex directions. She has moderate limitations using

> reason and judgment to make work-related decisions. She has mild limitations interacting adequately with supervisors, co-workers, and the public. She has mild limitations sustaining concentration and performing a task at a consistent pace, She has mild limitations sustaining an ordinary routine and regular attendance at work. She has moderate limitations regulating emotions, controlling behavior, and maintaining well-being. She is able to maintain personal hygiene and appropriate attire. She is able to be aware of normal hazards and take appropriate precautions. Her difficulties are caused by psychiatric symptoms and substance use.

Dkt. #4-1, pp.99-100.

The ALJ afforded each of these opinions great weight. Dkt. #4, pp. 949-951. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010). In addition to these opinions, the ALJ specifically referenced mental health treatment records between the 2009 and 2017 consultative examinations. Dkt. #4, pp.948-949. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999), *quoting Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

The ALJ did not arbitrarily substitute her own lay opinion for competent medical opinion as to plaintiff's mental RFC. *See, e.g., Balasmo v. Chater,* 142 F.3d 75,

80-81 (2d Cir. 1988). Rather, the ALJ appropriately acknowledged that although plaintiff's treatment records between the 2009 and 2017 consultative examination revealed symptoms of depression and anxiety, they generally found plaintiff to have appropriate affect and demeanor, intact attention and concentration, and intact memory and orientation consistent with the consultative examinations. Dkt. #4, pp.948-949. In other words, the medical records do not suggest significant deterioration in plaintiff's mental condition between the 2009 and 2017 consultative examinations. *Cf. Lesanti v. Comm'r of Soc. Sec'y*, 436 F. Supp.3d 639, 646 (W.D.N.Y.) ("A medical opinion may be stale if it does not account for the claimant's deteriorating medical condition.").

      Overall, the ALJ appropriately considered the consultative opinions, mental health treatment records, discontinuation of psychiatric medication, self-medication with cannabis, and activities of daily living, including plaintiff's ability to attend classes at Erie Community College and engage with other patrons at the casino, to determine that plaintiff was capable of performing simple, routine work that does not require production rate pace, with minimal changes in workplace processes and settings and which requires no more than occasional interaction with supervisors, coworkers and the public. Dkt. #4, pp.99, 940-942, 948-949 & 986-987. In other words, the ALJ appropriately weighed all of the evidence available to make a mental RFC finding that was consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                **March 25, 2020**

                                                     s/ H. Kenneth Schroeder, Jr.
                                                    **H. KENNETH SCHROEDER, JR.**
                                                    **United States Magistrate Judge**